UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————————

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| - v.- | ) |
| | ) |
| $2,337,674.62 SEIZED FROM METROPOLITAN COMMERCIAL BANK ACCOUNT 0199010765, HELD IN THE NAME OF "DELACROIX INVESTMENT FUND," | ) ) ) ) ) |
| | ) |
| Defendant-in-rem. | ) |
| | ) |

**VERIFIED COMPLAINT**

1 : 22 Civ. 10223

Comes now the Plaintiff, United States of America, through its undersigned attorneys, and alleges as follows:

## NATURE OF THE ACTION

1.    This is an action *in rem* to forfeit approximately $2,337,674.62 in seized funds pursuant to 18 U.S.C. § 981(a)(1)(A) on the grounds that those seized funds were involved in transactions by an unlicensed money transmitting business operated in violation of 18 U.S.C. § 1960 and were involved in money laundering in violation of 18 U.S.C. § 1956.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1355(a).

3.    Venue is proper in this District pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to forfeiture took place in the Southern District of New York.

4.     This  action  *in  rem*  for  forfeiture  is  governed  by 18 U.S.C. §§ 981 and 983, the Federal Rules of Civil Procedure, and  the  Supplemental  Rules  for  Admiralty  or  Maritime  Claims  and Asset Forfeiture Actions.

## THE DEFENDANT *IN REM*

5.     Defendant  *in  rem*  constitutes  all  funds  (approximately $2,337,674.62)  (hereinafter,  "Defendant  Property")  previously contained  in  Metropolitan  Commercial  Bank  account  0199010765 located in New York City, held in the name of "DELACROIX INVESTMENT FUND" and all funds traceable thereto, including accrued interest (hereinafter, "Subject Bank Account").

## RELEVANT NAMES AND ENTITIES

6.     Delacroix  Investment  Fund  (hereinafter,  "DIF")  is  a British  Virgin  Islands-incorporated  private  investment  fund  that purported to invest in securities. However, DIF never acted as a private  investment  fund  or  invested  in  securities.  Instead,  DIF functioned  as  an  unlicensed  money  transmission  business  to orchestrate,  among  other  things,  capital  flight  out  of  Argentina and  other  countries.  To  facilitate  its  unlicensed  money transmitting  business,  false  representations  were  made  to Metropolitan Commercial Bank that DIF acted as a private investment fund.  Those  representations  were  false  in  that,  at  all  materials times,  DIF  was  not  in  fact  operating  as  a  private  investment  fund. In  reality,  DIF  was  operating  a  money  service  business  (MSB),

2

although it was not registered as a money services business under the Bank Secrecy Act ("BSA") regulations at 31 CFR § 1022.380 with the Financial Crimes Enforcement Network ("FinCEN").

7.    Metropolitan Commercial Bank (hereinafter "MCB") is a bank and financial institution located in Manhattan, New York. In March 2019, MCB opened for DIF the Subject Bank Account. DIF used this account to unlawfully operate an unlicensed money transmitting business.

## GROUNDS FOR FORFEITURE

### STATUTORY BASIS

8.    Title 18, United States Code, Section 1960 prohibits operation of an unlicensed money transmitting business, which includes operating a money transmitting business without a state license, without federal registration, or while transmitting funds that are "known to the defendant to be derived from a criminal offense or are intended to be used to promote or support unlawful activity."

9.    Title 18, United States Code, Section 1956(a)(2)(A) prohibits the transfer of a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of specified unlawful activity.

3

10. A violation of Title 18, United States Code, Section 1960 is specified unlawful activity. See 18 U.S.C. §§ 1956(c)(7)(A), 1961(1).

11. Title 18, United States Code, Section 981(a)(1)(A) provides that "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of . . . section 1956 . . . or 1960 of this title, or any property traceable to such property," is subject to forfeiture to the United States.

## OVERVIEW OF THE BLUE DOLLAR PESO EXCHANGE

12. Due to capital flight from Argentina, the Argentine government set strict capital controls to limit the export of funds from Argentina as well as limit the exchange of Argentine Pesos into U.S. Dollars. These controls, combined with economic instability, gave rise to what are known as "blue dollar peso exchanges," which among other things, enabled customers to access more U.S. dollars than allowed under Argentine law. Operating a blue dollar peso exchange without a license is illegal under both United States and Argentine law.

13. The blue dollar peso exchange enables the movement of funds between two countries without the use of international wire transfers.

14. To operate, blue dollar peso exchangers require access to U.S. bank accounts. Blue dollar peso exchangers hold U.S. dollars in the accounts. Blue dollar peso exchangers transfer

U.S. dollars from these accounts at the direction of a client or a third party, after the client or a third party delivers Argentine pesos to the blue dollar peso exchanger in Argentina. Figure 1 illustrates the movement of funds between Argentina and the United States.

**Figure 1 – Flow of Funds Between Argentina and the United States**



15. Alternatively, clients utilize the blue dollar peso exchange to receive Argentine pesos after the client or a third party deposits U.S. dollars into the blue dollar peso exchanger's U.S. bank account. Figure 2 illustrates the movement of funds between the United States and Argentina.

Figure 2 - Flow of Funds Between the United States and Argentina



## DIF ESTABLISHED THE SUBJECT BANK ACCOUNT TO FACILITATE UNLICENSED MONEY TRANMISSION BUSINESS

16.   In or around September 2019, DIF established or caused to be established the Subject Bank Account at MCB. The Subject Bank Account was established under the false pretense that DIF was a private investment fund.  In fact, this bank account was established as a pass-through account[1] to facilitate a blue dollar peso exchange.

17.   Documentation was submitted  to MCB that falsely described DIF's transactions involving Subject Bank Account as being consistent with DIF's operation of an investment fund.

18.   On December 7, 2020, federal law enforcement agents interviewed representatives from MCB (collectively, the "Bank Representatives") in New York, New York, where MCB is based. In

_____

[1] For purposes of this complaint, a "pass-through account" is a bank account that receives deposits for purposes of transferring the funds to another account.

substance, Bank Representatives stated that, based on representations made to MCB as well as documents submitted to MCB, MCB understood DIF to be an investment fund involved in the trading of securities and investments.

19.   Bank Representatives reported that MCB received what was purported to be supporting documentation and private placement memoranda (hereinafter, "PPM") for DIF.

20.   A PPM is a legal document provided to prospective investors when selling stock or another security in a business. A PPM is used in private transactions when the securities are sold pursuant to an exemption under federal or state law.  As a result, the submission of the fraudulent PPM to MCB materially misrepresented that DIF's business purpose was to serve as a private investment fund when, in fact, DIF's purpose was to serve as an unlicensed money transmitting business.

21.   Bank Representatives indicated that they then forwarded the fraudulent PPM to MCB's compliance department for in-depth review. The PPM included a detailed description of how DIF operated, which included use of "subscription" and "redemption" language to justify incoming and outgoing wire transfers.

22.   The terms "subscription" and "redemption" are used in connection with private investment funds. A "subscription" is used to describe the purchase of shares in a private investment fund. A "redemption" is used to describe the sale of shares in a private

investment fund.  DIF's use of these terms in the PPM materially misrepresented DIF's business model as  a private investment fund when, in fact, it was an unlicensed money transmitting business.

23.  Bank Representatives at MCB were told that DIF's accounts at MCB would be used for the settlement of client investment transactions made through DIF's various investment funds.

24.  These misrepresentations made to Bank Representatives at MCB were materially misleading. MCB would not have established the Subject Bank Account for DIF if MCB had known that DIF was in fact operating as an unlicensed money transmitting business.

## DIF UTILIZED THE SUBJECT BANK ACCOUNT TO ACT AS AN UNLICENSED MONEY TRANSMITTER

25.  The Subject Bank Account operated as a conduit for an unlicensed money transmitting business.  Funds received by the Subject Bank Account were transferred either to accounts in the United States or to accounts overseas. DIF generally charged clients a fee for each deposit of funds into the fictitious private investment fund. The nature of these deposits was concealed from the bank in part due to representations that deposits into the DIF account would be "subscriptions," creating the materially false impression that deposits were purchases of a position in a private investment fund.  Similarly, representations were made to the bank that clients' withdrawals of funds from the DIF account would be

"redemptions," creating the materially false impression that withdrawals would be redemptions of a position in a private investment fund.

26.   A review of MCB financial records for the Subject Bank Account between 9/11/2019 and 9/30/2020 revealed that the account was regularly used to rapidly move funds.  The rapid movement of funds was consistent with DIF's actual use of the account as a pass-through account and was inconsistent with the representations made to Bank Representatives at MCB that DIF was using the account to settle trades in financial securities in connection with DIF's operation as a private investment fund.[2]

27.   MCB financial records reveal that between 9/11/2019 and 9/30/2020, $29,378,068.81 was transferred out of the Subject Bank Account. However, only 4.55 percent ($1,337,967.00) of these transfers represented international wire transfers. This activity (the transfer of 29,378,068.81 out of the Subject Bank Account) is consistent with clients or third parties withdrawing U.S. Dollars from the Subject Bank Account following a deposit of Argentine pesos with a Blue Dollar peso exchanger in Argentina as outlined in Paragraph 14 and Figure 1.

---

[2] DIF's new account application to MCB accurately stated that DIF's transactions would exceed $2 million per month.  DIF also declared that its anticipated monthly transactions would be 25 transactions per month.

28.   MCB  financial  records  further  indicate  that  between
9/11/2019  and  9/30/2020,  the  Subject  Bank  Account  received
$30,117,110.30  in  deposits.  Of  these  deposits,  only  23.88  percent
of  the  deposits  ($7,193,498.50)  were  the  result  of  international
wire  transfers.  This  activity  (the  transfer  of  $30,117,110.30  into
the  Subject  Bank  Account)  is  consistent  with  clients  or  third
parties  moving  funds  into  the  Subject  Bank  Account  to  obtain
Argentine  pesos  from  a  Blue  Dollar  peso  exchanger  in  Argentina,  as
outlined  in  Paragraph  15  and  Figure  2.

29.   At  no  material  time  was  DIF  registered  with  FinCEN  to
operate  as  a  money  transmitting  business,  as  required  by  Title  31,
United  States  Code,  Section  5330  and  the  regulations  prescribed
under  that  section,  including  31  CFR  §  1022.380.   Operating  an
unlicensed  money  transmitting  business  that  fails  to  comply  with
these  federal  money  transmitting  business  registration
requirements  constitutes  a  violation  of  18  U.S.C.  §  1960(a)  and
(b)(1)(B),  which  make  it  a  felony  to  "knowingly  conduct[],
control[],  manage[],  supervise[],  direct[],  or  own[]  all  or  part
of  an  unlicensed  money  transmitting  business  .  .  .  [that]  fails  to
comply  with  the  money  transmitting  business  registration
requirements  under  section  5330  of  title  31,  United  States  Code,
or  regulations  prescribed  under  such  section.".`

30.   Because  DIF  used  the  Subject  Bank  Account  to  engage  in
an  unlicensed  money  transmitting  business,  the  Subject  Bank

Account, and the Defendant Property funds that were on deposit in the Subject Bank Account, were "involved in" DIF's unlicensed money transmitting business.

31.   On December 11, 2020, the United States seized Defendant Property pursuant to a seizure warrant issued by the U.S District Court for the Southern District of New York.

**DIF USED THE SUBJECT BANK ACCOUNT TO ENGAGE IN
INTERNATIONAL FUND TRANSFERS TO PROMOTE DIF's
CARRYING ON OF AN UNLICENSED MONEY TRANSMITTER BUSINESS**

32.   The United States incorporates by reference paragraphs 1 through 31 above as if fully set forth herein.

33.   The operation of an unlicensed money service business, in violation of Title 18, United States Code, Section 1960, is a specified unlawful activity under Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1).

34.   With intent to promote the carrying on of its unlicensed money transmitting business, in violation of Title 18, United States Code, Section 1960, DIF transported, transmitted, and transferred, monetary instruments and funds both (a) from a place in the United States to a place outside the United States and (b) to a place in the United States from a place outside the United States.

35.   DIF thereby engaged in international promotion money laundering conduct in violation of Title 18, United States Code, Section 1956(a)(2)(A).

36.   Because DIF used the Subject Bank Account to engage in international promotion money laundering conduct, the Subject Bank Account, and the Defendant Property funds that were on deposit in the Subject Bank Account, were "involved in" DIF's international promotion money laundering conduct.

37.   Title 18, United States Code, Section 981(a)(1) subjects to forfeiture "[a]ny property, real or personal, involved in a transaction . . . in violation of [Title 18, United States Code,] [S]ection 1956 . . . or 1960 or any property traceable to such property."

## CLAIM FOR FORFEITURE

38.   The United States incorporates by reference paragraphs 1 through 37 above as if fully set forth herein.

39.   The Defendant Property was involved in transactions by an unlicensed money transmitting business, DIF, that operated without complying with the money transmitting business registration requirements under Title 31, United States Code, Section 5330 and the regulations promulgated under that section, which required DIF to be registered with FinCEN, all in violation of 18 U.S.C. § 1960.

40.   The Defendant Property was also used by DIF to engage in international fund transfers that promoted DIF's carrying on of its unlicensed money transmitting business. The Defendant Property was therefore involved in international promotional money laundering in violation of 18 U.S.C. §§ 1956(a)(2)(A), (c)(7)(A), and 1961(1).

41.   Therefore, the Defendant Property is forfeitable pursuant to 18 U.S.C. § 981(a)(1)(A).

## CLAIM FOR RELIEF

**WHEREFORE** Plaintiff, the United States, requests as follows:

(1)   Judgment against Defendant Property in favor of the United States;

(2)   issue process to enforce forfeiture of Defendant Property, by requiring all persons having interest in Defendant Property be cited to appear and show cause why forfeiture should not be decreed, and that this Court decree forfeiture of Defendant Property to the United States of America for disposition according to law; and

(3)   the United States be granted any other relief as this
      Court deems just and proper, together with the costs and
      disbursements of this action.

Dated: November 30, 2022.

                          Respectfully submitted,

                          BRENT S. WIBLE, CHIEF
                          MONEY LAUNDERING AND
                          ASSET RECOVERY SECTION

                  By:      _____/s/ Colin W. Trundle_____
                          COLIN W. TRUNDLE
                          ALEXANDER HASAPIDIS-SFERRA
                          MICHAEL W. KHOO
                          Trial Attorneys
                          MARK A. IRISH
                          Senior Trial Counsel
                          Money Laundering and Asset Recovery
                          Section
                          United States Department of Justice
                          1400 New York Avenue, NW
                          Bond Building, Suite 1012
                          Washington, DC 20005
                          Telephone: (202) 353-4806
                          Email: Colin.Trundle@usdoj.gov

                          Attorneys for Plaintiff
                          UNITED STATES OF AMERICA

## VERIFICATION

I, Alexander Rayas, a Special Agent with U.S. Department of Justice, Federal Bureau of Investigation hereby verify and declare under penalty of perjury that I have read the foregoing Verified Complaint *In Rem* and know the contents thereof, and that the factual statements contained in the Verified Complaint are true to my own knowledge, except those factual statements herein stated to be alleged on information and belief and as to those factual statements I believe them to be true. In signing this verification, I am not opining on any legal theories or conclusions contained herein.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the FBI. This Verified Complaint does not set forth each and every fact learned during the course of this investigation or known to the United States but rather only contains those factual statements necessary to establish, by a preponderance of the evidence, that the Defendant Properties are subject to forfeiture. The dates and amounts referred to in this Verified Complaint are approximate. The names referenced may have alternate spellings in original and translated documents.

I hereby verify and declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on this 30th day of November 2022.

*Alexander Rayas*

_____
ALEXANDER RAYAS
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION